IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO


Civil Action No. 05-cv-00069-PSF-OES


RUBEN J. MUNIZ,

Applicant,

v.

LARRY REID, Superintendent, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

Respondents.

_____

RECOMMENDATION FOR DISMISSAL OF ACTION AND
DENIAL OF REQUEST FOR REVIEW OF STATE RECORD
_____

**Entered by O. Edward Schlatter, United States Magistrate Judge.**


## INTRODUCTION

Applicant has pending before this court an Amended Application For A Writ of

Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Amended Application").  Respondents

have filed their Answer, and applicant has submitted his Traverse.  By motion, the

applicant has also requested that this court review the state court record regarding

certain pretrial, trial and postconviction proceedings.    Pursuant to 28 U.S.C. §

636(b)(1)(B), and F.R.Civ.P. 72(b), this matter has been referred to me for

Recommendation.

Applicant is entitled to seek review or reconsideration of my recommendation by

filing "objections" to this recommendation within ten days.  An advisement of his right to

appeal or object is attached to this Recommendation on a page which is entitled "Advisement Under Fed.R.Civ.P. 72."

## BACKGROUND

In 1988, applicant was convicted of aggravated robbery, attempted aggravated robbery, conspiracy to commit aggravated robbery, and two crime of violence counts in connection with the attempted robbery of a bowling alley and the robbery of a 7-11 convenience store. Additionally, he was then adjudicated an habitual criminal based upon three prior felony convictions, and was sentenced to life imprisonment. The judgment of conviction and sentence entered against the applicant were affirmed on direct appeal by the Colorado Court of Appeals on August 30, 1990. The Colorado Supreme Court denied certiorari review on June 1, 1992.

Thereafter, in 1993, the applicant filed his first motion for postconviction relief pursuant to Colo.R.Crim.P. 35(c), alleging eight separate grounds upon which he argued his judgment and conviction should be vacated. Following hearings held on the motion in October and November of 1995, the motion was denied by the trial court. The order denying postconviction relief was affirmed by the Colorado Court of Appeals in early 1998, and applicant's petition for writ of certiorari to the Colorado Supreme Court was denied later that year.

In January, 1999, the applicant filed a second Rule 35(c) motion which alleged 18 claims of error. All but one of the claims raised arguments of ineffective assistance of counsel in the district court on the first Rule 35(c) motion, with the remaining claim alleging ineffective assistance of counsel on appeal of the first Rule 35(c) motion. This

2

second motion was summarily denied by the district court in January of 2000.  The Colorado Court of Appeals affirmed the denial in October, 2003.  Certiorari was denied by the Colorado Supreme Court on July 6, 2004.

On January 14, 2005, applicant filed his original federal habeas application pursuant to 28 U.S.C. § 2254 in this court.  See Docket #3.  In the document, applicant had included claims inappropriate to raise in habeas corpus proceedings and it was found to be in violation of Rule 8 of the Federal Rules of Civil Procedure.  Accordingly, applicant was directed to file an Amended Application.  See Docket #7.

Thereafter, on March 17, 2005, the applicant filed his Amended Application requesting federal habeas relief.  In the Amended Application, he raises five claims for relief: Claim One alleges a violation of the applicant's constitutional rights based upon prosecutorial misconduct at trial.  Claim Two contends that applicant's due process rights were violated when the state trial court failed to instruct the jury that the guilty plea of applicant's co-defendant, Lawrence Garcia, could not be considered as substantive evidence against the applicant.  Applicant claims he was denied effective assistance of counsel in his third claim and, in his fourth claim, the applicant argues that his due process rights were violated when the trial court denied his motion for judgment of acquittal with regard to the habitual criminal counts against him.  Finally, in his fifth claim, the applicant appears to allege that the summary denial of his second Rule 35(c) motion on grounds that it was barred under state law violated his right to counsel and his due process rights.

In their Answer to the allegations of the Amended Application, the respondents

3

concede that the habeas request has been timely filed under 28 U.S.C. § 2244(d)(1), and allow that it appears the applicant has exhausted his state remedies with regard to the claims he raises.  Respondents do, however, challenge the claims on their merits, arguing that applicant has not established that he is entitled to habeas relief under the standard set forth in 28 U.S.C. § 2254(d) and that Claim Five is based solely on state law, precluding federal habeas relief.  The applicant received court permission to submit his Traverse in two separate installments, see Dockets #28 and #33[1], because the law library at facility at which he was house allegedly would not copy all of the Traverse, see Dockets #30-1 and #32. In the Traverse, the applicant strenuously objects to arguments raised by the respondents' Answer.

## DISCUSSION

**I.     Standard of Review.**

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  See Estelle

---

[1]The record reflects that the applicant filed a document entitled "Traverse/Supplemental Pleading In Support Of Amended Application For A Writ Of Habeas Corpus" ("Traverse") on June 21, 2005, which is contained at Docket #28. Thereafter, on June 23, 2005, the applicant requested leave of court to submit what he claimed to be the missing parts of his Traverse. See Docket #30. With his request, the applicant submitted copies of what he claimed were the missing materials. See Dockets #30-2 and #30-3. After leave of court was granted, see Docket #32, applicant again filed the same materials, see Docket #33.  Then, the applicant re-filed the same request to submit the same missing materials, see Docket #40, which the court accepted on August 10, 2005, see Docket #42.

The information and arguments contained in the materials at Dockets #30-2, #30-3, and #40 are identical to those already filed at Docket #33.  Accordingly, I deem the filings at Docket #28 and #33 to be applicant's complete Traverse, and will consider the same in these proceedings.

v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990);

Pulley v. Harris, 465 U.S. 37, 41 (1984).  "When a federal district court reviews a state

prisoner's habeas [application] pursuant to 28 U.S.C. § 2254 it must decide whether the

[applicant] is 'in custody in violation of the Constitution or laws or treaties of the United

States.'  The court does not review a judgment, but the lawfulness of the [applicant's]

custody *simpliciter*."  Coleman v. Thompson, 501 U.S. 722, 730 (1991).  The exhaustion

of state remedies requirement in federal habeas cases dictates that a state prisoner

must "give the state courts one full opportunity to resolve any constitutional issues by

invoking one complete round of the State's established appellate review process."

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  Accordingly, based on denial of

certiorari review by the Colorado Supreme Court in applicant's case, habeas review in

this court is concerned with the proceedings in the Colorado Court of Appeals which

was the final substantive proceedings in the state appellate review process.

Applicant's conviction became final prior to April 24, 1996, which is the effective

date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  However,

the AEDPA applies to all federal habeas applications filed after the AEDPA's effective

date, regardless of when the state proceedings occurred.  See Trice v. Ward, 196 F.3d

1151, 1158 (10th Cir. 1999); Moore v. Gibson, 195 F.3d 1152, 1163 (10th Cir. 1999).

Under AEDPA, an applicant is entitled to federal habeas relief only if he can

establish that the state court decision was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of

the United States," or was "based on an unreasonable determination of the facts in light

5

of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2);

see, also, Hale v. Gibson, 227 F.3d 1298, 1309 (10th Cir. 2000).

As the Supreme Court recently stated:

A state-court decision is contrary to . . . clearly established precedents if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme] Court but reaches a different result.  A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Brown v. Payton, 544 U.S. 133, 125 S.Ct. 1432, 1438-39 (2005) (internal citations omitted).

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require awareness of [those] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8 (2002).  So, when a state court adjudicates a federal issue relying solely on a state standard that is at least as favorable to the applicant as the federal standard, the reviewing court may presume an adjudication on the merits and apply AEDPA deference.  See Harris v. Poppell, 411 F.3d 1189, 1196 (10th Cir. 2005).

Factual findings made by the state trial and appellate courts are presumed correct, with the applicant having the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Darks v. Mullin, 327 F.3d 1001, 1007 (10th Cir. 2003).  "[W]hether a state court's decision was unreasonable must be assessed in light of the record [that court] had before it."  Holland v. Jackson, 542 U.S. 649, 651-52 (2004) (*per curiam*) (citations omitted).

6

Even if the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, unless the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by harmless-error standards," Brecht v. Abrahamson, 507 U.S. 619, 629 (1993), the harmless error standard of Brecht and O'Neal v. McAninch, 513 U.S. 432 (1995), must be applied. See Herrera v. Lemaster, 301 F.3d 1192, 1200 (10th Cir. 2002).  Under Brecht, habeas relief is not proper unless the error had a "substantial and injurious effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 623.  O'Neal addresses the situation where the court is in "grave doubt" about the likely effect of the error on the jury's verdict – that is, where "the matter is so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error." O'Neal, 513 U.S. at 435.  In such a case, O'Neal instructs the court to treat the error "as if it had a substantial and injurious effect or influence in determining the jury's verdict." Id. (quoting Brecht, 507 U.S. at 623).

Applicant proceeds in this action pro se.  As a pro se litigant, applicant's filings are entitled to liberal construction by this court.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the court should not be the pro se litigant's advocate.  Hall, 935 F.2d at 1110.

**II.    Plaintiff's Claims**.

    **A.    Claim One:  Prosecutorial Misconduct.**

Applicant asserts that at his trial, the state prosecutor presented false and misleading testimony from co-defendant Lawrence Garcia ("Garcia") with regard to the

7

plea agreement reached between the prosecution and Garcia, and that the prosecutor withheld from the jury the true nature of the benefits that Garcia would receive in exchange for his testimony.  Applicant claims that the actions of the state prosecutor constitute prosecutorial misconduct in violation of his right to due process.

After considering applicant's argument that prosecutorial misconduct violated his right to due process, the Colorado Court of Appeals upheld applicant's sentence. While the opinion of the state appellate court does not specifically reference due process, or make citation to any federal case law governing due process concerns, it upheld the applicant's sentence in the face of applicant's argument, which was made by the applicant purely under the principles of a fair trial guaranteed by the Fourteenth Amendment of the United States Constitution.  See ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment A, pp. 13-19.  Therefore, the Colorado Court of Appeal's decision must be treated as an "adjudication on the merits," and deferral to its result is warranted.  See Gipson v. Jordan, 376 F.3d 1193, 1196 n.1 (10th Cir. 2004). Accordingly, this court must uphold the appellate court's decision "unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based upon an unreasonable determination of the facts in light of the evidence presented."  Id. at 1197 (citing Aycox v. Lytle, 196 F.3d 1174, 1178 (10th Cir. 1999)).  This is not a de novo analysis of the claim, but instead, requires deference to the decision unless "its result - not its rationale - is 'legally or factually unreasonable.'"  Gipson, 376 F.3d at 1197.

The prosecution may not deliberately deceive the court or jury by presenting

false or misleading testimony.  See Mooney v. Holohan, 294 U.S. 103, 112 (1935); see, also, Giglio v. United States, 405 U.S. 150, 153 (1972) (knowledge of prosecutor who had promised favorable treatment to key prosecution witness, who later falsely testified there was no promise of favorable treatment, was attributed to second prosecutor, who was unaware of the promise, but relied on the perjured testimony to convict defendant thereby violating defendant's right to due process);  Napue v. Illinois, 360 U.S. 264, 269 (1959) (the actions of a prosecutor who has not solicited false testimony, but fails to correct it even though he knew it to be false, constitutes a violation of due process). The applicant bears the burden of proving the prosecutor knowingly presented false or misleading testimony.  See United States v. Caballero, 277 F.3d 1235, 1243 (10th Cir. 2002); Smith v. Gibson, 197 F.3d 454, 460 (10th Cir. 1999).  Applicant has failed to meet his burden.

> Based upon the record before it, the Colorado Court of Appeals concluded:
>
> Following [the] conflicting evidence, the trial court found there was no credible evidence of any prosecutorial misconduct and denied [applicant's] Crim.P. 35 motion on these grounds.  Because there is record support for the trial court's findings, its ruling will not be disturbed on review.

ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment C, p. 3 (citing Lamb v. People, 484 P.2d 798 (1971)).

A reviewing court cannot impose its own independent judgment on an issue of credibility to overrule the decision of a court that had the opportunity to view the testimony first-hand. Bryan v. Gibson, 276 F.3d 1163, 1171 (10th Cir. 2001), opinion vacated in part on other grounds on reh'g en banc Bryan v. Mullin, 335 F.3d 1207 (10th

Cir. 2003) (resolving factual issues depends on the factfinder's evaluation of the credibility and demeanor of witnesses).  The Colorado Court of Appeals did what it was suppose to do in this situation, that is to review the record to insure there was support for the trial court's findings.  Further, in this court, the deference due to state court's findings under § 2254 includes deference to findings on credibility.  Church v. Sullivan, 942 F.2d 1501, 1516 (10th Cir. 1991).  This presumption of correctness applies not only to express credibility findings, but implied findings as well.  Id.

Without credible evidence to support a finding that the prosecutor deliberately deceived the court or jury in presenting Garcia's testimony concerning the plea agreement and/or the true nature of the benefits Garcia would receive, the applicant cannot prevail on a claim of a violation of his due process rights based on prosecutorial misconduct.  Accordingly, the decision of the Colorado Court of Appeals is not legally unreasonable and habeas relief under 28 U.S.C. § 2254(d)(1) is not warranted on this claim.

Applicant argues that the state courts made an unreasonable determination of the facts in light of the evidence presented.  However, the record before the Colorado Court of Appeals demonstrated that resolution of this claim rested on the credibility of the witnesses at the evidentiary hearing held in connection with the applicant's postconviction proceedings.  At trial, co-defendant Garcia had testified that in exchange for testifying against the applicant, he would receive a two-year deferred judgment, or probation, rather than 8 to 16 years if he was in the aggravated range for sentencing, or 4 to 8 years if he was not.  ANSWER TO ORDER TO SHOW CAUSE, Docket #19,

Attachment A, pp. 5-7.  On cross-examination, he maintained that those were the terms

of the agreement.  Id. at Attachment A, p. 7.  He had entered a guilty plea in this regard

on March 8, 1988, and was awaiting sentencing.  Id.  However, Garcia had been

arrested 15 days after the plea, and charged with 3 or 4 counts of second degree

burglary in Arapahoe County, Colorado.  Id. at Attachment A, p. 8.  Garcia had also

reached a plea agreement in the Arapahoe County case, and Garcia indicated that he

did not think that the outcome of applicant's trial would have any bearing on the

Arapahoe County case.  Id.

On redirect examination, the prosecution elicited testimony from Garcia which

indicated that because of the Arapahoe County case, he was "looking at penitentiary

time" on the Denver case.  ANSWER TO ORDER TO SHOW CAUSE, Docket #19,

Attachment A, p. 8.   The prosecution also asked Garcia whether the prosecution had

indicated he was going to get better treatment in the Arapahoe County case because of

his cooperation in the applicant's case, and Garcia indicated they had not.  Id.  On

recross, Garcia maintained that no one in Arapahoe County had promised to do any

favors in return for his testimony.  Id.

However, at the postconviction evidentiary hearing, Garcia testified that he had

lied at trial.  ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment A, pp. 9-13.

He indicated that "he understood that in exchange for his testimony, he would receive

'favoritism' in both the Denver and Arapahoe cases."  Id. at Attachment A, p. 9.  Also

notable in the record is that at the postconviction hearing, Garcia completely reversed

his previous testimony and "denied participating in the robbery himself or knowing that

it had occurred," when at trial he "had testified in detail about his own and [applicant's] participation" in the robbery.  Id. at Attachment B, p. 10.  Additionally contained in the record were the testimony of Garcia's Denver defense counsel and his Arapahoe defense counsel, together with the testimony of the Denver and Arapahoe prosecutors, who agreed there was no relationship between the two cases.  Id. at Attachment B, p. 12.  "In particular there was no plea concession in Arapahoe because of the Denver case and no joint agreement for the two cases."  Id.   This issue boiled down to Garcia's word against those of the attorneys who prosecuted and defended him.

In light of the facts in the record, it is reasonable to conclude that a rational trier of fact could have found a lack of credible evidence of prosecutorial misconduct and to conclude there is record support for such a finding.  An extensive evidentiary hearing was held in this regard, at which the applicant was given ample opportunity to present evidence, and the parties cited extensively to that hearing in their briefing to the state appellate court.  Applicant attempts to argue that the hearing did not provide him with a full and fair opportunity to address this issue, but he makes only conclusory statements in this regard, with no well-pled facts or facts from which it could be inferred to support the allegation.

The state appellate court's findings were based upon the record from the hearing, and there is no evidence to support that the court misunderstood the record or that the record was ignored.  See, e.g., Wiggins v. Smith, 539 U.S. 510, 528-29 (2003) (where state court plainly misunderstands the record in making its findings, and the confusion goes to a material factual issue that is central to the applicant's claim, that

12

misunderstanding can result in factual finding that is unreasonable); Miller-El v.

Cockrell, 537 U.S. 322, 347 (2003) (state courts are not required to address every hint

or shred of proof suggested to them, nor are they required to "make detailed findings

addressing all the evidence before [them]."). Accordingly, the provisions of §

2254(d)(2) do not provide an avenue for review of the applicant's first claim.

Applicant has filed a Motion To Review The State Record, in which he requests

that under Rule 5 of the Rules Governing Section 2254 Cases this court review

designated portions of actual pretrial, trial and hearing testimony from the state court

records in this regard. See Docket #37. However, as noted previously, this court's

review and consideration of the applicant's claim is not a de novo analysis of the claim.

Gipson, 376 F.3d at 1197. This court looks at whether the state appellate court's result

is legally or factually unreasonable, id., and makes that assessment in light of the

record the Colorado Court of Appeals had before it, Holland, 542 U.S. at 651-52. That

record is represented by the briefing and citations to the record made on appeal by the

parties, and the briefing essentially contains or cites to the trial and hearing testimony

which the applicant asks this court to review under his separate motion.

"[D]eterminations of a factual issue made by a State Court shall be presumed to

be correct," unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Factual issues are limited to "basic primary, or historical facts: facts in the sense of a

recital of external events and the credibility of their narrators." Thompson v. Keohane,

516 U.S. 99, 110 (1995) (presumption of factual issue determination correctness

standard under pre-AEDPA version of § 2254(d), which was revised and is now set

forth at § 2254(e)(1)).  Clear and convincing evidence is evidence that is "so clear,

direct, weighty and convincing as to enable the jury to come to a clear conviction,

without hesitancy, of the truth of the precise facts in issue." United States Fire Ins. Co.

v. Royal Ins. Co., 759 F.2d 306, 309 (3rd Cir. 1985).   Here, applicant presents no such

evidence to rebut the correctness of the state court's finding of credibility.   Essentially,

what the applicant desires is for this court to re-consider and re-weigh the evidence

previously presented, and re-determine the credibility of the witnesses.  That is not the

function of federal habeas review.  Accordingly, applicant's request for review of the

state record should be denied.

Applicant also attempts to raise arguments in support of his prosecutorial

misconduct claim that evidence was withheld which was favorable to him, under Brady

v. Maryland, 373 U.S. 83 (1963), based on a discovery motion that he alleges was

served on the prosecution on January 25, 1988.  See AMENDED APPLICATION, Docket

#10, p. 5-C-4; TRAVERSE, Docket #28, p. 10.  Applicant contends that the prosecution

suppressed:

> (1).  All rap sheets of lay witnesses. (2). Any agreements made with co-
> defendant Garcia, whether or not they have been consumated [sic] for his
> testimony. (3). Any probation reports for Garcia. (4). Any documents
> which tend to show a continuing relationship between Garcia and the
> prosecution, such as letters or memoranda reciting agreements between
> the prosecution and Garcia.

Id.  However, this argument was not briefed on his postconviction appeal of the

prosecutorial misconduct claim.  There is only a passing reference to Brady in the

argument concerning the prohibition of the Fourteenth Amendment against the

prosecution offering perjured testimony.  See ANSWER TO ORDER TO SHOW CAUSE,

Docket #19, Attachment A, pp. 13-14.  Only issues raised in the applicant's opening

brief were properly before appellate court.  Both federal and Colorado state courts have

determined that a claim raised in a reply brief is not properly before the court for

consideration.  See Codner v. United States, 17 F.3d 1331, 1332 n.2 (10th Cir. 1994)

(stating that an issue raised for the first time in a reply brief is waived); People v.

Czemerynski, 786 P.2d 1100 (Colo. 1990) (issue raised for the first time in a reply brief

is not properly before an appellate court).  Accordingly, the allegations are not

exhausted for purposes of federal habeas review.[2]

However, even if the argument had been fairly presented to the state courts, it

would fail in this court.  Under Brady, the prosecution violates a defendant's due

process rights when it fails to disclose evidence favorable to the defendant that was

material either to guilt or punishment.  See Brady, 373 U.S. at 87  Evidence is material

---

[2]The provisions of 28 U.S.C. § 2254(b)(3) indicate that the respondents cannot be deemed to have waived the requirement of exhaustion, unless the waiver is "expressly" made by counsel.  Respondents have not made an express waiver in their response to the Amended Application.  A waiver of a defense by a state is usually found to have occurred only if the waiver is "unequivocal," which means "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction."  Edelman v. Jordan, 415 U.S. 651, 673 (1974) (viewing waiver in the context of Eleventh Amendment immunity).   With no analysis, the Answer To Order To Show Cause states the only broad conclusions that the claims were raised in the state courts, and that "the Applicant has exhausted his claims."  ANSWER TO ORDER TO SHOW CAUSE, Docket #19, p. 9.  Based on the record, I would be hard-pressed to find an express waiver in this instance.  Additionally, a federal court need not accept a state's express waiver of the exhaustion issue.  See Victor v. Hopkins, 90 F.3d 276, 278 (8th Cir. 1996).  "The purpose of exhaustion is not to create a procedural hurdle on the path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to a federal court."  Duvall v. Purkett, 15 F.3d 745, 747 n.4 (8th Cir. 1994).  Federal courts "should no more tolerate disregard for this principle by the State than by the habeas [applicant]."  Id.

if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. United States v. Bagley, 473 U.S. 667, 682 (1985).  A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome" of the case.  Id.  " 'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " Moore v. Gibson, 195 F.3d 1152, 1165 (10th Cir.1999) (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).

First, the applicant has asserted no facts which meet the reasonable probability standard.  Second, placing the allegedly suppressed evidence in the context of the entire record, it does not demonstrate that the result of the proceeding would have been any different.  Applicant argues that the nondisclosure might have affected the jury's assessment of credibility of the witness, i.e., Garcia.  However, Garcia's credibility was already at issue under the information regarding plea agreements in both the Denver and Arapahoe County cases which was presented to the jury, and was already a factor for the jury to weigh in its consideration of the case.  While applicant argues that Garcia may have reached a better plea deal than what was disclosed in his testimony at trial, and contends that the nondisclosed evidence would aid in establishing that fact, it would have been one factor among many for the jury to weigh in considering Garcia's credibility.  The undisclosed evidence presented no new issue as to applicant's guilt or innocence, nor did the evidence directly relate to the events surrounding the robbery.   In light of the other evidence of guilt, see ANSWER TO ORDER

16

To Show Cause, Docket #19, Attachment B, pp. 3-6, the record fails to demonstrate a reasonable probability that, had the requested discovery been disclosed to the defense, the result of the proceeding would have been any different.

Applicant also appears to be attempting to raise an argument that the prosecutor improperly vouched for Garcia during closing argument and made false statements in closing regarding Garcia's testimony.  See Traverse, Docket #28, p. 11.  Applicant bases his claim of vouching on the following statements by the prosecutor:

> Mr. Garcia lied.  That's right.  Mr. Garcia lied and you've got the lie right here.  I'll tell you one thing, Mr. Garcia is a lousy liar.  Read it.  He's a lousy liar.  Is that a good liar?  Mr. Garcia couldn't lie his way out of a wet paper bag.

Id.  With regard to the false statement, applicant claims the prosecution said, "The co-defendant [applicant] told Lawrence Garcia that he got rid of the gun.  The same thing with the bag," when in fact what Garcia testified that he was concerned about the gun, but didn't know what happened to it.  Id. at p. 12.

As with applicant's Brady argument, there is nothing in the briefing considered by the Colorado Court of Appeals which would demonstrate that the argument was presented to the court on appeal of the postconviction prosecutorial misconduct claim. However, because applicant's claim in this regard is without merit, the claim can be denied without reference to the exhaustion issue.  See Moore v. Schoeman, 288 F.3d 1231, 1232 (10th Cir. 2002).

"Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the witnesses' veracity or by

17

implicitly indicating that information not presented to the jury supports the witness' testimony." United States v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005) (internal quotation marks omitted).  Here, the statement of the prosecutor with which the applicant takes issue makes no personal assurance of Garcia's credibility, and the prosecutor never indicated to the jury that he knew something more about the witness's credibility than could be deduced from the evidence at trial.  Even if the statement was over the line in favor of vouching, see United States v. Broomfield, 201 F.3d 1270, 1276 (10th Cir. 2000) (assuming prosecutor's characterizations and arguments were improper vouching, but deciding that any error was harmless), there is no evidence of substantial unfair prejudice.

With respect to due process, the closing argument will only warrant relief on federal habeas review if it renders an applicant's trial or sentencing "fundamentally unfair."  See Donnelly v. DeChristoforo, 416 U.S. 637, 645 (1974).  That determination depends on whether there is a reasonable probability that, in the absence of the improper arguments, the outcome would have been different.  Strickland v. Washington 466 U.S. 668, 695-96 (1984).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  This is not a harmless error standard; instead, if the court finds that the circumstances of the case did not render applicant's trial unfair, then there is no constitutional error.  Darden v. Wainwright, 477 U.S. 168, 183 n. 15 (1986).  While the applicant has colorably demonstrated that the prosecution's statement was erroneous, he fails to demonstrate that if the statement had not been made, the outcome of the proceedings would have been any different.

Particularly, he fails to show that the comment was significant enough to influence the jury's decision in light of the evidence of guilt in the record.  Accordingly, there is no constitutional error.

Prosecutorial misconduct warrants habeas relief only if it so infects the trial process as to make the resulting conviction a denial of due process.  Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir.), *cert. denied*, 531 U.S. 1020 (2000).  Applicant has failed to demonstrate that these actions by the prosecution rise to the level of a due process violation, and therefore, his claim must be denied.

**B.    Claim Two:  Instructional Error.**

Applicant argues in the second claim of his Amended Application that his Fourteenth Amendment due process rights were violated when the state courts failed to grant him a new trial based on the trial court's failure to instruct the jury that co-defendant Lawrence Garcia's guilty plea could not be considered as substantive evidence against the applicant.  Review of the applicant's presentation of this claim in his postconviction appeal to the Colorado Court of Appeals reveals that the claim presented did not explicitly raise the issue of constitutional due process.  Instead, reversible error was claimed under Colo.R.Crim.P. 52(b).  See Answer To Order To Show Cause, Docket #19, Attachment A, p. 21.  While the briefing cites to Tenth Circuit cases on the issue, the cases concern direct appeal of a similar reversible error argument under the Federal Rules of Criminal Procedure.  Id. at Attachment A, p. 19.  Additionally, state case law cited in the briefing concern direct appeal on grounds of reversible error, without clearly raising the issue of due process.  Id.  Therefore,

whether this claim has appropriately been exhausted in the state courts is

questionable.  See Picard v. Connor, 404 U.S. 270, 278 (1971) (in order to have been

fairly presented to the state courts for exhaustion purposes, the form of a claim raised

to the state appellate court must be the "substantial equivalent" of the form of the claim

raised in the federal habeas petition).  However, the claim is without merit and

therefore, it can be denied without reference to the exhaustion issue.  See Moore, 288

F.3d at 1232.

  With regard to the applicant's reversible error claim made on postconviction

appeal, the state appellate court identified it's review as being limited to plain error.

See ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment C, p. 4.  Under state

law, "[p]lain error is that which so undermines the fundamental fairness of a trial as to

cast serious doubt on the reliability of the ultimate verdict."  Id. (citing Harris v. People,

888 P.2d 259 (Colo. 1995).  Confining its analysis to plain error review, the Colorado

Court of Appeals wrote:

> Here, on direct examination of the accomplice, the prosecutor elicited
> testimony regarding the plea bargain. [Applicant] did not object nor did he
> request a limiting instruction.  To the contrary, on cross-examination, the
> defense explored the plea bargain in greater detail apparently as a matter
> of trial strategy.
>
> In any event, contrary to [applicant's] contention, the prosecution's case
> did not hinge solely on the accomplice's testimony.  Rather, there was
> substantial independent evidence against [applicant] including physical
> descriptions by several victims which matched [applicant].  At the time of
> his arrest, [applicant] also was found with several incriminating items,
> including a ski hat described by the victims, plus particular coins and a
> bag taken from one of the establishments that had been robbed.  Further,
> a gun was found in the snow near where defendant was arrested and a
> witness testified at trial that it looked like the one used in the robbery.

ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment C, p. 4.  In short, the state appellate court found no plain error because the absence of a limiting instruction did not undermine the fairness of the trial, thereby casting serious doubt on the reliability of the ultimate verdict.

The applicant has failed to cite Supreme Court precedent, and I am aware of none, establishing a constitutional mandate for a limiting instruction regarding an accomplice's guilty plea.  As there is no constitutional requirement for a limiting instruction, habeas relief for failure to provide such an instruction is warranted only if the omission of the instruction "had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."  Foster v. Ward, 182 F.3d 1177, 1193 (10th Cir. 1999); see, also, Henderson v. Kibbe, 431 U.S. 145, 156-57 (1977).  Because the Colorado Court of Appeals applied the same basic substantive test in its plain error analysis that this court would apply to determine whether there has been a due process violation, deferral to its ruling is warranted unless it "unreasonably appli[ed]" that test.  28 U.S.C. § 2254(d); see Harris, 411 F.3d at 1196.  The test was not unreasonably applied in this case.

A limiting instruction regarding Mr. Garcia's guilty plea would not have altered the elements of the offenses with which the applicant was charged and, as found by the Colorado Court of Appeals, "the prosecution's case did not hinge solely on the accomplice's testimony."  ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment C, p. 4.  The record demonstrates that Garcia's testimony was corroborated by other evidence.  While a limiting instruction might have helped the applicant, it was by no

means essential to the jury's consideration of the matter.  *Cf.* Foster, 182 F.3d at 1193-94 (trial court's failure to give unrequested cautionary instruction on accomplice testimony did not render trial fundamentally unfair).  The record that was before the state appellate court is insufficient to demonstrate that the failure to give the unrequested limiting instruction rendered applicant's trial fundamentally unfair.  Therefore, the state court's decision was not legally unreasonable and habeas relief under § 2254(d)(1) is unavailable to the applicant.

Applicant does attempt to argue that the state court's decision was an unreasonable determination of the facts in light of the evidence presented.  Applicant argues that (1) there were not several victims who gave physical descriptions that matched him, particularly taking issue with the testimony of Paul Stringham, who was the clerk at the 7-11 store that applicant was convicted of robbing, and (2) that the several items of "incriminating" evidence used against the applicant at trial were never sufficiently linked to him.  See AMENDED APPLICATION, Docket #10, pp. 6-D-2 and 6-D-3.; TRAVERSE, Docket #28, pp. 17-19.

A federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable.  See Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001 (state court's determination of facts must be objectively unreasonable in light of evidence available to the state court); Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000) (same standard of unreasonableness applies under subsections § 2254(d)(1) and § 2254(d)(2)).  Mere disagreement with the state court's determination,

or even erroneous factfinding, is insufficient to grant relief if the court acted reasonably. Weaver, 241 F.3d at 1030.

Here, on appeal, the applicant brought to the court's attention the alleged suggestive one-on-one show up identification of the applicant by Mr. Stringham shortly after the 7-11 store robbery, and the fact that the identification was strongly challenged at trial. ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment A, p. 20.  He also argued that no witness at the bowling alley was able to identify him as the person who attempted to rob that establishment.  Id. at Attachment A, p. 3.  Applicant dismissed the other evidence against him as "circumstantial," but admitted that the items were recovered from his person or from the car in which he was riding in the area of the 7-11 robbery.  Id. at Attachment A, pp. 3-4, 21.

The state countered applicant's position with citation to the testimony of Mr. Stringham, bowling alley employees Nancy McKissak and James Crook, and police officers Beaulieu, Lopez and Panc.  ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment B, pp. 4-6.  While neither Stringham, McKissak or Crook had been able to see the applicant's face, which was covered by a ski mask or hat, they each consistently identified him by height, weight and clothing, and identified the gun used in the crime.  Id. at Attachment B, pp. 4-5.  Mr. Stringham and Mr. Crook identified the robber as Hispanic.  Id. at Attachment B, p. 4.   Police Officers Beaulieu and Lopez testified that a ski hat described by the witnesses, and particular coins and a bag taken from the 7-11 were found on the applicant's person or in the car in which he was riding. Id. at Attachment B, pp. 5-6.  Police Officer Panc had searched the area of the arrest

23

on foot, and after following fresh footprints in the snow, located a gun in front of a residence in the area.  Id. at Attachment B, p. 6.

Although the evidence in the record was clearly disputed between the parties, both parties were clearly given the opportunity to persuasively present their positions to the state appellate court, and there is nothing in the record to demonstrate that the court failed to consider or misunderstood the evidence presented to them under these arguments. Accordingly, the decision of the state court was not an objectively unreasonable determination of the facts based upon the evidence presented to it and review of applicant's second claim under § 2254(d)(2) is precluded.

### C.     Claim Three: Ineffective Assistance of Counsel.

Applicant has alleged that he received ineffective assistance of counsel based on three separate grounds: (1) counsel failed to hire an expert witness regarding identification; (2) counsel failed to request a limiting instruction regarding the accomplice's guilty plea testimony; and (3) counsel failed to provide the applicant with discovery materials.  This claim was presented to the state courts on federal constitutional grounds, and is therefore, exhausted.  See AMENDED APPLICATION, Docket #10, pp. 23-25.

The Supreme Court has opined that to demonstrate ineffectiveness of counsel, a defendant must generally show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 687. The prejudice component of this test requires the applicant to demonstrate that there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceedings would have been different." Id. at 694.   Failure to establish either prong of the Strickland standard will result in the denial of habeas relief.  Id. at 695.

With regard to the ineffective assistance of counsel claims that were presented to the state court under the applicant's state postconviction appeal, the court identified and applied the appropriate standard set forth in Strickland.  See ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment C, p. 5.  Further, nothing in the record demonstrates that the state appellate court reached a different result based on facts that were materially indistinguishable from a decision of the Supreme Court, nor did it apply the Court's precedents to the facts in an objectively unreasonable manner.  The court evaluated the totality of the evidence before it, to include the evidence and testimony from trial and the postconviction evidentiary hearing which was presented by the parties, and weighed the factors according to the two prongs of the Strickland standard.  Applicant fails to identify any decision of the United States Supreme Court which holds, based on facts similar to those of the applicant, that the failures of counsel such as those complained of by the applicant result in ineffective assistance of counsel.

Additionally, the state appellate court's decision is based upon a reasonable determination of facts in light of the evidence presented.  The evidence before the court demonstrated that applicant had supplied the testimony of an expert that:

> [I]f there [is] a possibility of a tainted one-on-one identification of a criminal defendant and the issue of identification [is] "important" or "dispositive" of the case, that either during a suppression hearing or at trial an expert should be called regarding the reliability of the identification.

ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment A, p. 23.  However, the identification testimony was not the only – or the primary – evidence against the applicant.  See Id. at Attachment A, p. 24; Attachment B, p. 21.  Further, the state appellate court found that "the [expert] witness admitted he was unfamiliar with the specific facts of [applicant's] case and was unable to state whether defense counsel was deficient in any respect or whether [defendant] suffered prejudice from the alleged deficiencies."  Id. at Attachment C, p. 6.  Applicant has failed to rebut this finding with any evidence or well-pled facts.

Argument, with citation to the record, demonstrated that testimony of applicant's expert recognized that a jury instruction limiting the use of a co-defendant's guilty plea would be generally "wonderful," if it were applicable, but did not establish that such an instruction was required under the standard of reasonable competence.  Id. at Attachment B, p. 19.  With regard to applicant's claim that trial counsel should have given copies of discovery to him, the state appellate court found support in the record for the trial court's finding that applicant's testimony that he had not been provided with discovery materials lacked credibility.  Id. at Attachment C, p. 7.  Nothing in the record before this court provides a basis to disturb those findings.  Church, 942 F.2d at 1516 (deference due to state court's findings under § 2254 includes deference to findings on credibility).

In light of the evidence against the applicant, and the undisputed facts contained in the record, it is highly unlikely that the applicant's trial would have come to a different conclusion had his attorney made none of the alleged errors raised by the applicant.

Applicant has failed to establish that habeas review is warranted under § 2254(d) and the record demonstrates that applicant cannot meet his burden under the Strickland test.  Therefore, he is not entitled to relief under his ineffective assistance of counsel claim.

### D.    Claim Four: Sufficiency of Evidence on Habitual Charges.

Applicant argues that during the habitual offender proceedings, the prosecution failed to prove that the counts against him consisted of separate criminal episodes in violation of his right to due process.  Under state law in Colorado, underlying felony convictions relied upon by the prosecution to establish habitual offender status must be based "upon charges separately brought and tried, and arising out of separate and distinct criminal episodes . . . ."  ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment C, p. 8 (*quoting* Colo.Rev.Stat. § 16-13-101(2)).

In advancing this argument, the applicant faces a high hurdle.  The appropriate inquiry is whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (internal citations omitted).  "This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  Id.  While citing to the state case of People v. Jones, 967 P.2d 166 (Colo.Ct.App. 1997), when analyzing the applicant's claim, the Colorado Court of Appeals identified that the prosecution bears the burden of proving every element of the habitual offender count beyond a reasonable doubt.

The AEDPA adds an additional degree of deference to state courts' resolution of sufficiency of the evidence questions.  See Valdez v. Ward, 219 F.3d 1222, 1237 (10th Cir. 2000) ("Under AEDPA, however, where a habeas [applicant's] sufficiency of the evidence challenge has already been decided in state court, [the federal courts] employ a more limited review.").  Therefore, the question is whether the Colorado Court of Appeals' conclusion that the record evidence was sufficient constituted an unreasonable application of the standard set forth in Jackson.  See Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003).  In this regard, the state appellate court found the following evidence to have been presented at trial:

> (1) on December 7, 1979, [applicant] had pled guilty to first degree assault and aggravated robbery in Adams County, in Case No. 79CR437 and was sentenced on December 19, 1979, which sentence was amended on April 15, 1980 (Count 4); (2) on December 5, 1979, [applicant] had pled guilty to criminal attempt to commit aggravated robbery in Denver in Case No. 79CR1816 and was sentenced on December 13, 1979 (Count 5); and (3) on September 21, 1979, [applicant] had pled guilty to aggravated robbery in Denver in Case No. CR10923 and was sentenced on November 20, 1979 (Count 6).

ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment C, pp. 9-10.

Applicant argued on appeal that two of the habitual criminal counts, Counts 4 and 5, arose from two incidents taking place on the night of August 15, 1979.  Id. at Attachment A, p. 28.  He introduced testimony at the postconviction proceedings to the effect that he and another individual had planned to commit more than a single robbery, and to that end, they had first robbed a motel in Denver and then attempted a second robbery in Adams County.  Id. at Attachment A, p. 29.  The time lapse between the two offenses was approximately 30 minutes.  Id.  As noted by the state appellate court,

however, the trial court found that even though "[C]ounts 4 and 5 were close in time,

they occurred in different judicial districts and involved different pleas on different dates

with different case numbers before different judges." Id. at Attachment C, p. 9.  The

applicant raises the same arguments in this court.   However, this court "may not weigh

conflicting evidence nor consider the credibility of witnesses," and conflicting

inferences must be presumed resolved in the favor of the prosecution. Messer v.

Roberts, 74 F.3d 1009, 1013 (10th Cir. 1996).

Additionally, evidence before the Colorado Court of Appeals also demonstrated

that the "plan" referenced by the postconviction witness was to "get a lot of money, and

that references to "plan," "scheme," and "continuous episode" were in defense

counsel's questions and not the witness' narrative." ANSWER TO ORDER TO SHOW

CAUSE, Docket #19, Attachment B, p. 23.  The evidence as a whole, when viewed in a

light most favorable to the prosecution, reasonably supports a finding of separate and

distinct criminal episodes by a reasonable trier of fact beyond a reasonable doubt and

the record before the state court demonstrates a decision based upon a reasonable

determination of facts in light of the evidence presented.

Finally, under state law, the term "criminal episode" in the habitual criminal

statute should be given the same meaning as it is given in the mandatory joinder

statute.  ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment C, p. 8.  Whether

or not the finding of the state courts complied with state law in this regard is irrelevant

to this court's analysis of applicant's claim.   Errors of state law do not provide grounds

for federal habeas relief.  See Estelle, 502 U.S. at 67-68.   Accordingly, federal habeas

relief is not warranted on this claim.

   **E.   Claim Five:  Summary Denial of Second State Postconviction Motion.**

   Applicant's fifth claim appears to argue that his Sixth Amendment right to

counsel and his due process rights were violated when his second state postconviction

motion was denied in summary fashion, without a hearing, as being previously litigated

and therefore barred.  Applicant also makes a claim that his substantive due process

right was violated and makes a cursory reference to an equal protection violation, but

never fully fleshes out these arguments.  AMENDED APPLICATION, Docket #10, pp. 8-3-G

and 8-7-G.  Applicant's second state postconviction motion had asserted eighteen

claims of ineffective assistance of postconviction and postconviction appeal counsel.

ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment H, p. 1.  Review of the

briefing in connection with applicant's appeal in this regard reveals that the claim raised

in the state court was not the same as the one applicant seeks to champion in this

court.  Id. at Attachment F.[3]  The briefing fails to explain how the summary denial

violated his right to counsel, his due process rights or any right to equal protection.

Instead, the briefing argues that "the district court was acting outside of, and contrary

to, Rule 35(c)," and that the "courts are not at liberty to circumvent the procedures

_____

   [3]The record contains two appellate briefs filed on behalf of the applicant.  See
ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachments E and F.  However, the
briefing set forth at Attachment E concerns applicant's appeal in Denver District Court
Case No. 87CR731, concerning applicant's conviction for possession of cocain and three
counts of habitual criminal.  Id. at Attachment E, p. 2.  The Amended Application at issue
before this court concerns applicant's robbery conviction in Denver District Court Case No.
88CR19.  AMENDED APPLICATION, Docket #10, p. 1.  The state court appellate briefing
applicable to this conviction is set forth at Attachment F of the Answer To Order To Show
Cause.

regulated by Rule 35(c), nor are they at liberty to delegate their duties to any "fact-finder." ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment F, pp. 14 and 16. The focus of applicant's appeal was that the state court's determination that applicant's ineffective assistance of counsel claim was barred as previously litigated was erroneous. Id. at Attachment F, p. 18.  The briefing makes only citation reference to U.S. CONST. Amends. V, VI and XIV.  See, e.g., Id. at Attachment F, pp. 13, 17, 19.

In order to allow the state courts the opportunity to act on or correct the violations alleged, the applicant must do more than just invoke the magic words "right to counsel," "due process," or "equal protection," or make only cursory citation to the appropriate constitutional amendments.  He must provide legal theory explaining how the summary denial violated these particular federal constitutional rights.  See Picard v. Connor, 404 U.S. 270, 276-77 (1971) (holding, in pre-AEDPA case, habeas applicant failed to fairly present federal claim to state court where, despite presenting all necessary facts, applicant failed to assert specific argument that he later tried to raise in federal court); see, also, Thomas v. Gibson, 218 F.3d 1213, 1221 n. 6 (10th Cir. 2000) (holding applicant's general state court claim was insufficient to exhaust his later, more specific federal habeas claim).  Applicant failed to do so on appeal and, therefore, this claim is unexhausted.  However, because the claim is without merit, this court may deny it without regard to the exhaustion issue.  See Moore, 288 F.3d at 1232.

To begin with, unless state collateral review violates some independent constitutional right (such as the Equal Protection Clause, see, i.e., Lane v. Brown, 372 U.S. 477 (1963)), errors in state collateral review cannot form the basis for federal

habeas relief.  See Steele v. Young, 11 F.3d 1518, 1524 (10th Cir. 1993).  Looking at

applicant's assertion of a Sixth Amendment violation, there is no constitutional right to

an attorney in state postconviction proceedings.  Pennsylvania v. Finley, 481 U.S. 551

(1987); Murray v. Giarratano, 492 U.S. 1 (1989) (applying the rule to capital cases).

Consequently, a postconviction applicant cannot claim constitutionally ineffective

assistance of counsel in such proceedings.  See Wainwright v. Torna, 455 U.S. 586

(1982) (where there is no constitutional right to counsel, there can be no deprivation of

effective assistance).  Accordingly, any claim the applicant is attempting to raise under

the Sixth Amendment is without merit.

Next, the threshold question in any due process analysis is whether a

constitutionally protected interest is implicated.  As demonstrated in the preceding

paragraph, however, the applicant has no constitutionally protected interest in

postconviction counsel.  Although applicant may argue that Colorado has created a

constitutionally protected interest because its procedural rules require him to assert

claims of ineffective assistance of counsel in a postconviction proceeding, *cf.*

Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 8-11 (1979) (a constitutionally

protected interest may be created when state statutes or regulations place substantive

limitations on the exercise of official discretion), the argument fails because Colorado

encourages, but does not require, defendants to raise ineffective assistance of counsel

claims in postconviction proceedings, see, e.g., People v. Apodaca, 998 P.2d 25, 29

(Colo.Ct.App. 1999).

Because the applicant has no constitutionally protected right to an attorney in

state postconviction proceedings, under Colorado's procedural rules or otherwise, he is not entitled to due process protections.   Any claim that the state courts erred under Colo.R.Crim.P. 35(c) by finding his claims were barred as previously litigated is a question of state law, and a federal court may not review a state court decision for errors of state law.   See Estelle, 502 U.S. at 67-68.   Accordingly, he has no claim in this regard which would entitle him to relief and this claim should be dismissed.

Applicant argues that judicial bias was apparent in the 35(c) hearing held in state court, and that the presiding judge should have recused himself.   AMENDED APPLICATION, Docket #10, p. 8-4-G; TRAVERSE, Docket #28, p. 43.   In particular, applicant argues:

> In this case, Judge Bayless[, who presided over applicant's postconviction proceedings,] and Denver district attorney Mitch Morrissey[, who prosecuted the applicant at his trial] were friends and legal colleagues; Judge Bayless had worked as a district attorney alongside Mitch Morrissey in the Denver district attorney's office up to and including either the late-winter or early spring months of 1988, during the time period that [applicant's] case was being made ready to go to trial in May of that year.

AMENDED APPLICATION, Docket #10, p. 8-4-G.

To succeed on a due process claim of judicial bias, applicant must demonstrate either that the judge was actually biased against him or that "circumstances were such that an appearance of bias created a conclusive presumption of actual bias." Fero v. Kerby, 39 F.3d 1462, 1478 (10th Cir. 1994).   Applicant presents no well-pled facts or facts from which it can be inferred to demonstrate anything but that Judge Bayless and Mr. Morrissey worked in the same office in 1988.   Applicant's postconviction proceedings were not filed until 1993 and the evidentiary hearing not held until 1995.

33

<u>See</u> ANSWER TO ORDER TO SHOW CAUSE, Docket #19, Attachment A, p. 2-3.

Additionally, applicant claims Judge Bayless was "derogatory and antagonistic to the defense." AMENDED APPLICATION, Docket #10, p. 8-4-G; TRAVERSE, Docket #28, p. 45. However, "judicial remarks during the course of a [hearing] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." <u>Liteky v. U.S.</u>, 510 U.S. 540, 555 (1994). The examples of judicial remarks applicant has cited to imply "impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as . . . judges, sometimes display." <u>Id</u>. The fact that the Judge made rulings that were against or adverse to the applicant also do not support the applicant's argument, since a judge's adverse rulings may provide grounds for appeal, but generally do not show bias. <u>Id</u>. Applicant's speculation about the friendship between Judge Bayless and Mr. Morrissey, and its effect on his proceedings, is grossly insufficient to demonstrate bias which would violate due process. <u>See</u> <u>United States v. Cooley</u>, 1 F.3d 985, 993 (10th Cir. 1993).

Finally, the Equal Protection Clause is violated when the government or its officials treat a person differently than others who are similarly situated. <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985); <u>Penrod v. Zavaras</u>, 94 F.3d 1399, 1406 (10th Cir. 1996).

> [An applicant] in an equal protection action has the burden of demonstrating discriminatory intent. It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor.

Watson v. City of Kansas City, Kan., 857 F.2d 690, 694 (10th Cir. 1988) (citations omitted.

Even with the liberal construction accorded *pro se* pleadings under Haines v. Kerner, 404 U.S. 519 (1972), applicant has failed to allege any facts to demonstrate the discriminatory intent or purpose necessary to succeed on his equal protection claim. See, e.g., Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252 (1977) (under the standard applicable to claims of racial discrimination, proof of racially discriminatory intent or purpose is necessary).

Applicant is not entitled to habeas relief under the arguments raised in Claim Five of his Amended Application, and the same should be denied.

## **CONCLUSION**

In viewing the merits of the applicant's claims, applicant is not entitled to relief under 28 U.S.C. § 2254.  Pursuant to Rule 8 of the rules governing section 2254 proceedings, no evidentiary hearing is required.

Based upon the foregoing analysis, and the entire record herein, I hereby **RECOMMEND** that District Judge Phillip S. Figa **DENY** applicant's Motion For Review State Record [Filed August 1, 2005; Docket #37].  Further, I hereby **RECOMMEND** the Amended Application [Filed March 17, 2005; Docket #10] be **DENIED**, and that this case be dismissed with prejudice.

Dated at Denver, Colorado, this 27th day of January, 2006.

BY THE COURT:

 s/ O. Edward Schlatter
O. Edward Schlatter
United States Magistrate Judge

## ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve

and file any written objections in order to obtain reconsideration by the District Judge to

whom this case is assigned.  FED. R. CIV. P. 72.  The party filing objections must

specifically identify those findings or recommendations to which the objections are

being made.  The District Court need not consider frivolous, conclusive or general

objections.  A party's failure to file such written objections to proposed findings and

recommendations contained in this report may bar the party from a de novo

determination by the District Judge of the proposed findings and recommendations.

United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).

Additionally, the failure to file written objections to the proposed findings and

recommendations within ten (10) days after being served with a copy may bar the

aggrieved party from appealing the factual findings of the Magistrate Judge that are

accepted or adopted by the District Court.  Thomas v. Arn, 474 U.S. 140, 155 (1985);

Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar

Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).